# BELKNAP,

## DECEMBER TERM, A. D. 1851.

---

## CATE *v.* NUTTER.

In the trial of a prosecution for a military fine, a copy of the record, certified by the clerk, of any order received or issued by the captain, is admissible as evidence of such order.

So also a copy of the record of a company order for parade, and of the return thereon, under oath, of the sergeant or private who may have served the notice certified by the clerk, is. competent evidence of the enrollment of the person notified, and of due notice of the parade of the company.

And where the copy of the record is admissible in evidence, the record itself is equally competent.

A roll of delinquents properly made by the clerk, in his orderly book, is competent evidence of the delinquencies described therein.

Parol evidence relating thereto is also admissible.

The original order, issued by a captain to the clerk, to warn the members of the company, is competent evidence for the purpose of showing that the record thereof, made by the clerk, is not a true record.

It is competent for the person notified to perform military duty, to show the form and character of the, written notice served upon him.

A notice, in such case, which is not addressed to the person to be notified, by name, is wholly insufficient.

The limits of military companies intended by chap. 77, § 1, and chap. 84, § 1, Revised Statutes, are territorial.

Where the order prescribing the limits of certain military companies was as follows, namely : " Ordered that all persons liable to do military duty, living on the hundred acre lots in B., except one range on the northeasterly end of said lots, shall cònstitute the second company of infantry ; the remaining part of said town shall constitute the sixth company of infantry," it was *held* that the limits were territorial and sufficiently definite.

APPEAL from the decision of a justice, founded upon the complaint of Edwin Cate, as clerk of the sixth company of infantry in the tenth regiment, against Nathan Nutter, for not doing mili-

tary duty on the 18th of September, 1848, at a regimental muster on that day.

To show the limits of the Company, the plaintiff produced the regimental records, in which was found the following entry:

"Head Quarters, 10th Reg., N. H. Militia, at Gilmanton.

"Ordered, that all persons liable to do military duty, living on the hundred acre lots in Barnstead, except one range on the northeasterly end of said lots, shall constitute the second company of Infantry. The remaining part of said town shall constitute the sixth company of Infantry. Captains John H. Collins and Thomas P. Hodgdon will take notice of the above, and govern themselves accordingly.

"March 21, 1826. Signed, Nicholas Durrell,
Nathaniel Gilman,
James S. Hoit,
Field Officers of said Regiment.

"A true copy, attest— Dixi Crosby, Adjutant."

This evidence was excepted to, because there was no law prior to 1829 authorizing the records to be made by the adjutant; that the record of such an order is not evidence, and because it does not appear that those who purport to sign the order were field officers at the time, nor that Crosby was the adjutant, and because the boundaries are not geographical, nor are they sufficiently definite.

The plaintiff also produced the orderly book of the company, wherein were also recorded the same limits. To prove the book to be that of the company, the plaintiff was permitted to testify, subject to the defendant's exception on account of his liability for costs in this action, and being party to the record. This record did not show the order to be that of the Field Officers, but was what purported to be an order from some source, fixing the limits as above.

To show said Cate to be second sergeant of the company, the orderly book was produced, wherein was recorded a sergeant's warrant in due form, dated May 9th, 1848, and sworn to.

An original warrant was also produced, of the same date, but

not countersigned by the clerk, nor was there any date to the administration of the oath. This evidence was excepted to as not showing said Cate to be sergeant.

In the same book was recorded the company order, dated 7th September, 1848, directed to said Cate as sergeant, ordering him to notify the said Nutter and others, to appear on parade on the 15th of September, and also on said 18th of September, at the Regimental muster. There was also the record of service upon Nutter, on the 11th of September, duly sworn to, and a record of the roll of delinquents on said 18th, and among them the said Nutter. In addition to the exception already taken, that this book was proved by Cate, an interested witness, as alleged, the defendant took the further exception, that these records were not the competent evidence to prove the fact. The plaintiff also proved by parol that Nutter did not do military duty on the 18th of September. To which exception was taken. Other evidence was introduced by the plaintiff to make out his case, which was not excepted to.

The defendant then offered to show, by the original paper issued by the captain, that the records of the orderly books above set forth were false in two respects. First, that the captain made out the company order of the 7th of September, to warn the men to appear on the 15th, and signed it; that there was then interlined, under his name, the order to warn them to appear on the 18th, and that was not signed or dated. Second, that the only notice given to Nutter to appear on the 18th, was as follows: "Also to appear on Monday, the 18th day of September, near John Gale's dwelling house, in Gilmanton, at precisely six o'clock, A. M., armed and equipped as the law requires for military inspection and review, and there await further orders. Dated at Barnstead, on Saturday, the 9th day of September, 1848.                    Signed,      Edwin Cate, Sergeant."

And that said notice had no direction whatever, but was delivered to the defendant at the same time a notice was given him to appear on the 15th.

The court ruled the evidence inadmissible. A verdict was

thereupon taken by consent for the plaintiff, on which judgment was to be entered, or the verdict set aside and a new trial granted, as the opinion of this court should be upon the whole case.

*Hobbs & Sanborn*, for the defendant.

The companies are not limited by geographical boundaries. *Jones* v. *French*, 2 Foster's Rep. 64; *Perry* v. *Dover*, 12 Pick. 206.

The limits should be such that they could be understood and readily ascertained by every person liable to do military duty.

Such is not the fact in the case at bar.

The limits should be defined by monuments on the ground.

Previous to the act of Jan. 2, 1829, N. H. Laws, 387, sec. 14, (Ed. 1830,) adjutants were not required or authorized to make any record of the limits of companies, or furnish to the captains of the several companies copies of orders made by the field officers limiting companies. See N. H. Laws, 1824, (Hill's Ed.) p. 63, § 19, and p. 87, § 5.

The writing in the adjutant's book had not even the force of secondary evidence, and was wholly inadmissible.

The entry in the company book was wholly inadmissible, because it did not appear that the order was issued by any authority whatever.

Cate being liable for costs, could not be admitted to testify to a particular fact. *Bowman* v. *Noyes*, 12 N. H. Rep. 313; *Pudor* v. *Boston & Maine R. R.*, 26 Maine Rep. 458.

The warrant was not countersigned by the clerk, as required by law, and was no evidence of his appointment. Rev. Stat., chap. 93, § 8.

It was competent for the defendant to show, by the original order and return, which was the evidence offered, that the record was false. The original order and return are made admissible for the plaintiff, and therefore for the defendant. Rev. Stat., chap. 78, § 3.

*Butters*, for the plaintiff.

Woods, J.   The objection that the company book of records was not competent evidence of the issuing of the company order, and of the service of the notice upon the defendant, cannot be sustained.   The statute makes a copy of the record of such order, and of the return, under oath, of the sergeant or private thereon, who may have delivered the notice to the party warned, certified by the clerk, competent evidence of " due notice of enrolment and of such parade."   Rev. Stat., chap. 78, § 3.

By the statute, also, it is made the duty of the clerk of a company to keep an orderly book, and to record therein all orders and official communications received or issued by his commanding officer.   Rev. Stat., chap. 89, § 1.   And it has been decided by this court, that a copy of record, certified by the clerk, of any order received or issued by the captain, is, upon general principles, admissible in evidence upon the trial of a prosecution for a military fine.   *State* v. *Wilson,* 7 N. H. Rep. 543.

If the copy of the record be competent evidence of the facts in question, the original record cannot be regarded as evidence of a less satisfactory or less authentic character.   *Jones* v. *French,* 2 Foster's Rep. 64.   The roll of delinquents in the orderly book kept by the clerk, is made, by express statute, evidence of the delinquency of the party.   Rev. Stat., chap. 82, § 1. And by the same section, other evidence relating thereto is admissible ; and we think parol evidence is included in the provision.   But we are not aware that the records of the clerk are conclusive evidence of the facts recorded.   And we are of opinion, that, although the record is *prima facie* evidence of the facts contained in it, nevertheless, the original order, offered in evidence, was admissible also, for the purpose of rebutting the evidence afforded by the record ; or, in other words, of impeaching it, to the extent, at least, of showing that the record is not a correct copy of the original.   The original order of the captain to the clerk must afford evidence of its own contents, of as high and conclusive a character, at least, as the record of it.

No doubt is entertained that it was competent for the defendant to have shown the form and character of the notice that

was served upon him. And, when shown, it would have appeared to have been a notice, not addressed to the defendant, or to any one else, by name. The notice is required to be either written or printed. Rev. Stat., chap. 78, § 2. And we think the notice must be addressed to the person by name, who is to be notified. The delivery of the notice to the party will not be regarded as sufficient, unless it is thus addressed to him. He is not to be left to infer from the fact that the notice is delivered to him, that he is a person duly enrolled and intended to be notified to perform military duty. By what name is he to understand that he is enrolled? And if he be not in fact enrolled by his proper name or designation, can he be considered as enrolled at all? A notice that is sufficient when delivered to a party, is equally sufficient if it were left at his usual place of abode. But how could a notice, left at one's usual place of abode, containing the address of no one, be considered a proper and legal notice, such as the statute contemplates? We have no hesitation in holding that the notice in this case was not such an one as the party was entitled to.

The evidence offered by the defendant at the trial, and rejected by the court, we think should have been admitted.

The limits of military companies, intended by chap. 77, § 1, and chap. 84, § 1, Rev. Stat., are territorial. *Jones* v. *French*, 2 Foster's Rep. 64; *Perry* v. *Dover*, 12 Pick. 206. The recorded limits, shown by this case, are of that character. All the hundred acre lots in Barnstead, except one range on the northeasterly end of said lots, are made to constitute the territory within which the persons shall reside who shall be enrolled in the second company of infantry, and the remaining part of said town was made to constitute the sixth company of infantry. By " the remaining part of said town," was clearly meant the remaining territory of the town, excepting that part which was included within the limits of the second company. Upon the face of the record, the whole town appears to be divided into two companies, having for their limits well defined geographical boundaries. That is sufficient. Whether the copy of the record given in evidence was competent proof of the facts contained in it, and of due

authority to establish the limits of the companies, we need not now inquire. Nor is it necessary to inquire into or decide the other questions in this case not already considered.

The verdict must be set aside, on account of the rejection of the evidence offered on the part of the defendant.

*Verdict set aside.*